# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN GOMEZ NORIEGA, *Plaintiff*, – against – THE CITY OF JERSEY CITY; MAYOR STEVEN FULOP (individually and in his official capacity as Mayor of the City of Jersey City); KIMBERLY WALLACE-SCALCIONE (individually and in her official capacity as Press Secretary/Spokesperson for the City of Jersey City); JOHN MINELLA (individually and in his official capacity as Mayor Fulop's Chief of Staff); JOHN METRO (individually and in his official capacity as Jersey City Manager); MOBIN YOUSAF (individually and in her official capacity as Jersey City Director, Employee Relations & Workforce Management); JOHN DOE (1-10), *Defendants*. | 2:24-CV-10599-WJM-JRA Civil Action Motion Date: March 17, 2025 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Of Counsel:*
Ralph J. Marra, Jr., Esq.

*On the Brief:*
Ralph J. Marra, Jr., Esq.
Paul C. Kingsbery, Esq.
Emily Arezzi, Esq.

**CALCAGNI & KANEFSKY LLP**
*Attorneys for Defendants*

One Newark Center
1085 Raymond Blvd., 18th Floor
Newark, New Jersey 07102
(862) 397-397-1796
rmarra@ck-litigation.com
pkingsbery@ck-litigation.com
earezzi@ck-litigation.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT ................................................................................................2

    I.    THE FIRST AMENDMENT DOES NOT PREVENT PLAINTIFF'S TERMINATION BASED ON POLITICAL CONSIDERATIONS. ...............................................................................2

        A.    As a Confidential Employee, Plaintiff Served at the Pleasure of Mayor Fulop and His Employment Was Terminable Without Cause. .................................................................................................3

        B.    Plaintiff Admits That His Role Involved Policymaking. ...................5

        C.    The Disruption Caused by Plaintiff's Political Support for His Sister's Campaign Independently Justifies His Termination. ...........6

    II.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF HAS FAILED TO IDENTIFY A CLEARLY ESTABLISHED RIGHT. ......................................................8

    III.    PLAINTIFF FAILED TO CURE DEFICIENT TORT NOTICE AND HAS NOT SHOWN EXTRAORDINARY CIRCUMSTANCES. ...................................................................................9

    IV.    PLAINTIFF FAILED TO IDENTIFY A DEFAMATORY STATEMENT OR ONE THAT PAINTS HIM IN A FALSE LIGHT. .................................................................................................10

    V.    PLAINTIFF'S LAD CLAIMS REMAIN DEFICIENT UNDER THE LAW. ...............................................................................................12

        A.    Plaintiff Fails to State a *Prima Facie* Discriminatory Discharge Claim Under LAD. .................................................................................12

        B.    Plaintiff Fails to Demonstrate the Requisite Severity or Pervasiveness of Defendants' Workplace Comments on his Lunch. ...............................................................................................13

        C.    Defendants Cannot be Liable for Aiding and Abetting LAD Violations Because They Did Not Discriminate Against nor Harass Plaintiff. .................................................................................14

CONCLUSION .............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Anderson v. Creighton*,
483 U.S. 635 (1987)................................................................8, 9

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007)..................................................... 11, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 6 (2007)...............................................................14

*Boyle v. County of Allegheny*,
139 F.3d 386 (3d Cir. 1998)......................................................2, 4

*Buckley v. Valeo*,
424 U.S. 1 (1976)..................................................................... 9

*Cardenas v. Massey*,
269 F.3d 251 (3d Cir. 2001)......................................................15

*D.D. v. Univ. of Medicine and Dentistry of N.J.*,
61 A.3d 906 (N.J. 2013)............................................................10

*Dougherty v. Sch. Dist. of Philadelphia*,
772 F.3d 979 (3d Cir. 2014).......................................................7

*Elrod v. Burns*,
427 U.S. 347 (1976)............................................................. 3, 4

*Fenico v. City of Philadelphia*,
70 F.4th 151 (3d Cir. 2023) ......................................................7

*Fenico v. City of Philadelphia*,
2024 WL 4591798 (E.D. Pa. Oct. 28, 2024) ...........................13

*Forcella v. City of Ocean City*,
70 F. Supp. 2d 512 (D.N.J. 1999) ...........................................9

*G.D. v. Kenny*,
205 N.J. 275 (2011) .................................................................................10

*Galli v. N.J. Meadowlands Comm'n*,
490 F.3d 265 (3d Cir. 2007) ................................................. 2, 5, 6

*Godfrey v. Princeton Theological Seminary*,
196 N.J. 178 (2008) .................................................................................14

*Higgins v. Pascack Valley Hosp.*,
158 N.J. 404 (1999) .................................................................................10

*Hill v. Borough of Kutztown*,
455 F.3d 225 (3d Cir. 2006) .................................................................7

*Lehmann v. Toys R'Us, Inc.*,
132 N.J. 587 (1993) .................................................................................13

*Malley v. Briggs*,
475 U.S. 335 (1986) .................................................................................9

*McLaughlin v. Rosanio, Bailets & Talamo, Inc.*,
751 A.2d 1066 (N.J. Super. Ct. App. Div. 2000) ...................................11

*McVey v. AtlantiCare Medical Sys. Inc.*,
276 A.3d 677 (N.J. Super. Ct. App. Div. 2022) .....................................13

*Minor v. Del. River and Bay Auth.*,
70 F.4th 168 (3d Cir. 2023) ...............................................................8, 9

*Mirabella v. Villard*,
853 F.3d 641 (3d Cir. 2017) .................................................................8

*Muth v. Woodring*,
666 F. App'x 137 (3d Cir. 2016) ...........................................................8

*Ness v. Marshall*,
660 F.2d 517 (3d Cir. 1981) .................................................................3

*O'Hare Truck Service, Inc. v. City of Northlake*,
518 U.S. 712 (1996) ................................................................................. 8

*Rich v. State*,
294 F. Supp. 3d 266 (D.N.J. 2018) ....................................................... 14

*Romaine v. Kallinger*,
109 N.J. 282 (1988) ............................................................................... 10

*Victor v. State*,
203 N.J. 383 (2010) ............................................................................... 12

**Statutes**

18 U.S.C. § 2511(2)(d) ............................................................................. 7

Rev. S. Mo. § 542.402(3) ......................................................................... 7

N.J.S.A. § 59:8–8 ..................................................................................... 9

Defendants The City of Jersey City ("Jersey City"), Mayor Steven Fulop ("Mayor Fulop"), Kimberly Wallace-Scalcione, John Minella, John Metro, and Mobin Yousaf (collectively "Defendants") respectfully submit this reply brief in further support of their motion to dismiss the Complaint. For the reasons that follow, the motion should be granted.

## PRELIMINARY STATEMENT

This is not a case about traditional political party affiliation retaliation or "patronage." Rather, it is about an elected official's ability to expect staff members who represent them in public-facing roles to comport themselves in line with the elected official's policy preferences. As a member of Mayor Fulop's personal staff who served at his pleasure and was involved in policymaking, the First Amendment did not isolate Plaintiff's role from political considerations. Plaintiff supported his sister's campaign despite her extreme public statements attacking the LGBTQ+ community. That had an immediate impact on Plaintiff's ability to assist Mayor Fulop perform the duties of his office, and Mayor Fulop was forced to terminate Plaintiff. Under such circumstances, Plaintiff's termination did not offend the First Amendment. Even drawing every inference in favor of the Plaintiff, his First Amendment claims must be dismissed.

Moreover, Plaintiff's defamation, false light, and LAD claims must be dismissed because he has failed to allege essential elements of each of those claims.

– 1 –

Plaintiff repeatedly appeals to the need for discovery to support his claims, and several times argues that "[d]iscovery will reveal . . ." facts necessary to support his claims," *see* Opp. at 8, 12, 13, 14, 16, 21, 29, 37, 40, but under the Federal Rules of Civil Procedure, a Complaint must do more to survive a motion to dismiss.  The Court should not allow Plaintiff to file a facially defective complaint in the thin hope that discovery may reveal facts that could cure the complaint's deficiencies.

## ARGUMENT

## I.  THE FIRST AMENDMENT DOES NOT PREVENT PLAINTIFF'S TERMINATION BASED ON POLITICAL CONSIDERATIONS.

Plaintiffs' First Amendment claims fail because it is indisputable that Plaintiff served at the pleasure of the mayor as an aide and member of Mayor Fulop's personal staff.  *See* Defs. Br. at 10–11.  He had no fixed job responsibilities beyond what Mayor Fulop requested of him, and Plaintiff's own allegations confirm that he served in a confidential, policymaking capacity.  *See id.* at 12.  As such, it was reasonable for Mayor Fulop to terminate Plaintiff's employment when it became clear that he could not perform his assigned role in line with Mayor Fulop's policy preferences.  Under any reasonable application of Third Circuit law, *see Boyle v. County of Allegheny*, 139 F.3d 386, 395 (3d Cir. 1998); *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007), which Plaintiff does not address at all in his opposition, Plaintiff's employment was not protected by the First Amendment.  Moreover, Plaintiff admits that his support for his sister's campaign became

disruptive to Mayor Fulop's administration in August 2024. *See* Compl. ¶¶ 60, 84

89. Accordingly, his dismissal can be separately and independently justified because

he was ineffective in carrying out the duties and responsibilities of his office. *See*

*Ness v. Marshall*, 660 F.2d 517, 521 (3d Cir. 1981). For all these reasons, Plaintiff's

termination did not offend the First Amendment.

### A.    As a Confidential Employee, Plaintiff Served at the Pleasure of Mayor Fulop and His Employment Was Terminable Without Cause.

The undisputed facts in the Complaint, particularly when viewed in

conjunction with the statutes and regulations that governed Plaintiff's role, establish

that he served as a "confidential" employee whose employment was not subject to

First Amendment protections.

Plaintiff attempts to avoid this result by focusing his opposition nearly

exclusively on the "policymaking" exception to the First Amendment. Indeed,

Plaintiff relies heavily on the U.S. Supreme Court's decision in *Elrod v. Burns*, 427

U.S. 347 (1976), suggesting that only "policymaking" employees are exempt from

First Amendment scrutiny. However, this relies on a clear misreading of *Elrod* and

entirely ignores subsequent case law. While the three-justice plurality in *Elrod* only

discussed the exception for "policymaking" employees, 427 U.S. at 367–68, 372, a

clear majority of the Court, including two concurring and three dissenting justices,

would have agreed that a "policymaking" or "confidential" government employee

"can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 374–75 (Stewart, *J.*, concurring); *see also id.* at 375–89 (Burger, C.J., dissenting) (dissenting on the grounds that there was no basis for First Amendment protections in the absence of civil service protections). Plaintiff also ignores subsequent case law, including *Boyle*, clearly establishing that "confidential" employees may be terminated at will without violating the First Amendment.

Plaintiff does not seriously dispute that he was a "confidential" employee. Plaintiff claims that he could not have been a "confidential" employee because he was "a public employee of Jersey City, a government entity." *See* Opp. at 17. He also claims that "[d]iscovery will reveal that Mr. Gomez was not a . . . confidential employee." *See id.* at 8. And Plaintiff claims that his "official title did not include the term 'confidential'" and that his job responsibilities were not confidential because "his role was clerical and administrative." *See id.* at 12. All of these arguments are beside the point. First, Plaintiff's argument that he was a "public employee" and thus automatically disqualified as a "confidential" employee is nonsensical because the *Boyle* exception, which applies to any qualifying government employees, would become a dead letter. Second, it is not relevant that the term "confidential" was not included in his title because *Boyle* requires a functional analysis based on the individual's actual responsibilities. Finally, the

– 4 –

admissions in the Complaint itself that he served as an "aide" and appeared publicly on behalf of Mayor Fulop in a representative capacity at events and as a member of the LGBTQ+ Task Force squarely refute his belated attempt to claim that his role was "clerical and administrative," Opp. at 13, a point which he admits was not alleged in the Complaint.

There is no need for further discovery. The allegations in the Complaint itself show that Plaintiff served as a confidential employee, and it was not unreasonable for Mayor Fulop to terminate him when he lost trust and confidence in his ability to perform his role as a member of his personal staff. Accordingly, Counts One and Two must be dismissed.

## B.    Plaintiff Admits That His Role Involved Policymaking.

Similarly, Plaintiff's own admissions clearly establish that he served in a policymaking capacity, and the Court should not allow Plaintiff to walk those admissions back merely because they are fatal to his First Amendment claims.

Under Third Circuit law, although there are many potential considerations that go into determining whether an employee is involved with policymaking, "the *key* factor . . . [was] whether [he] ha[d] meaningful input into decisionmaking concerning the nature and scope of a major program." *Galli*, 490 F.3d at 271 (emphasis added) (internal quotations and citations omitted).

Accordingly, Counts One and Two must be dismissed because Plaintiff's Opposition Brief openly admits that Plaintiff was involved in policymaking on the Task Force. Opp. at 15 ("The only involvement Mr. Gomez had in any form of policy-related work was his participation in the LGBTQ+ Task Force."). Despite Plaintiff's attempt at re-framing the nature of his participation, Plaintiff's very next sentence meets *Galli*'s "meaningful input" standard with respect to policymaking: "[Plaintiff's] participation was limited to making recommendations, not formulating or implementing binding policies." Opp. at 15–16. *Galli* did not exclude policy recommendations or hold that an employee's work must have resulted in "binding" policy. Under *Galli*, an employee can be characterized as a policymaking employee regardless of whether that meaningful input yields binding policies. 490 F.3d at 271 (quotations omitted). Here, Plaintiff was entrusted with the responsibility of serving as Mayor Fulop's representative on the LGBTQ+ Task Force, and that was an important policy position for Mayor Fulop's administration.[1]

### C.    The Disruption Caused by Plaintiff's Political Support for His Sister's Campaign Independently Justifies His Termination.

Regardless of whether Plaintiff qualifies as a "policymaking" or "confidential" employee, a public employee's statement is not protected where the

---

[1] Unlike the Commission employee in *Galli*, Plaintiff here was not a low-level employee who made recommendations to the LGBTQ+ Task Force but instead was a member of the Task Force itself. *Cf. Galli*, 490 F.3d at 271–72.

government employer had "adequate justification" for treating the employee different than a member of the general public, such as its interest in "promoting workplace efficiency and avoiding disruption." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006); *Fenico v. City of Philadelphia*, 70 F.4th 151, 166 (3d Cir. 2023); *id.* at 165 (requiring employer to show only reasonable likelihood of disruption).

Plaintiff's support for his sister's campaign was disruptive to Mayor Fulop's ability to govern Jersey City because his continued support for a candidate with extreme anti-LGBTQ+ views caused other elected officials in Jersey City to question whether he could effectively advance his policy agenda. It is beyond dispute that Plaintiff's statements "interfere[d] with the regular operation" of Jersey City governance. *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 991 (3d Cir. 2014). Plaintiff's own Complaint admits the disruption, Compl. ¶¶ 65–72, 89,[2] and

---

[2] Also indisputably disruptive was his sister's publication of a private phone call between Mayor Fulop and Plaintiff. *See* Compl. ¶¶ 96–97. Plaintiff now claims that he "was unaware that this call was being recorded, and he had no knowledge that it would later be published online." Opp. at 21. Setting aside that this disclaimer is not alleged in the Complaint, Plaintiff is effectively claiming that his sister illegally recorded a phone conversation without the consent of any party to the call, in violation of Rev. S. Mo. § 542.402(3); 18 U.S.C. § 2511(2)(d). Mayor Fulop can hardly be faulted for assuming that Ms. Gomez did not illegally record their phone conversation without any party's consent. Even so, it is undisputed that the violation of Mayor Fulop's trust was disruptive. *See* Opp. at 21.

whether he was on vacation at the time that disruption occurred is of no moment. *See infra* at 12–13.

## II.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF HAS FAILED TO IDENTIFY A CLEARLY ESTABLISHED RIGHT.

To the extent Plaintiff has stated a claim for retaliatory termination under the First Amendment—and Defendants dispute this for all the reasons stated above—Counts One and Two still must be dismissed with respect to each of the individual defendants because Plaintiff has failed to demonstrate any "clearly established right" to be free from adverse employment action based on public support of a candidate with policy views in conflict with the priorities of the government under which Plaintiff served.   Qualified immunity bars any claim against an individual government official under § 1983 if the Plaintiff cannot show that the challenged conduct infringed his or her "clearly established" right.  *See Muth v. Woodring*, 666 F. App'x 137, 139 (3d Cir. 2016); *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017).  For a right to be clearly established, it must be "defined with a high degree of specificity" and every reasonable official must have understood that what he was doing clearly violated the right.  *Minor v. Del. River and Bay Auth.*, 70 F.4th 168, 173–74 (3d Cir. 2023) (citing *Anderson v. Creighton*, 483 U.S. 635, 636–37 (1987)).

Here, Plaintiff fails to identify any case law that would support his theory that a clearly established right was violated: *O'Hare Truck Serv., Inc. v. City of Northlake*

was a case about First Amendment retaliation against independent contractors that, by policy, could only be terminated with cause, 518 U.S. 712, 726 (1996); *Malley v. Briggs* is not a First Amendment case at all, 475 U.S. 335, 337–46 (1986); and *Buckley v. Valeo* says nothing about employment, 424 U.S. 1, 7–144 (1976).

Instead, much like Plaintiff's Complaint, Plaintiff's argument is comprised of vague recitations of the law that rest on conclusory statements.  In fact, Plaintiff does not attempt to define or even redefine Defendants' definition of the "clearly established right" Plaintiff claims was violated.  Furthermore, Plaintiff likewise fails to define the right with the requisite specificity needed to put every reasonable official on notice.  *See Minor*, 70 F.4th at 173–74; *Anderson*, 483 U.S. at 636–37.  Accordingly, as a matter of law, Defendants are entitled to qualified immunity on Counts One and Two because Plaintiff failed to demonstrate the existence of a "clearly established right" that was violated.

## III.  PLAINTIFF FAILED TO CURE DEFICIENT TORT NOTICE AND HAS NOT SHOWN EXTRAORDINARY CIRCUMSTANCES.

A claimant who fails to file timely notice of his tort claim under New Jersey's Tort Claims Act ("TCA") may be permitted to pursue his claims upon (1) "[a]pplication to the court for permission," (2) "supported by affidavits," (3) "showing sufficient reasons constituting extraordinary circumstances for his failure to file a notice of claim" within ninety days.  *See Forcella v. City of Ocean City*, 70 F. Supp. 2d 512, 515 (D.N.J. 1999); N.J.S.A. § 59:8–8.  Importantly, "[t]he

Legislature has commanded that relief be granted only in circumstances that are extraordinary." *D.D. v. Univ. of Medicine and Dentistry of N.J.*, 61 A.3d 906, 917 (N.J. 2013). This qualification is so high that a claimant cannot even use his attorney's inattention or ignorance of the law as a basis for extraordinary circumstances excusing an untimely filing. *See id.* at 920–22.

Here, Plaintiff has failed to comply with the requisite procedure for filing a late notice, and even after Defendants' Motion to Dismiss brought it to Plaintiff's attention, Plaintiff still waited over a month to correct the deficiency. *See* Ghione Decl. Ex. C (waiting until March 3, 2025, to provide notice to Defendants). And even then, Plaintiff's counsel failed to comply with the statutorily prescribed procedure for an untimely filing. Counts Five and Six must therefore be dismissed.

## IV.  PLAINTIFF FAILED TO IDENTIFY A DEFAMATORY STATEMENT OR ONE THAT PAINTS HIM IN A FALSE LIGHT.

Plaintiff's defamation claim remains deficient with respect to a fundamental element of a defamation claim: a statement defaming him. *See G.D. v. Kenny*, 205 N.J. 275, 292–93 (2011). A statement is defamatory only when it "'is false and injurious to the reputation of another' or exposes another person to 'hatred, contempt or ridicule' or subjects another person to 'a loss of the good will and confidence' in which he or she is held by others." *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 426 (1999) (quoting *Romaine v. Kallinger*, 109 N.J. 282, 289 (1988)). However, "only verifiable statements can be defamatory[,]" "opinions" are not actionable, and

"recovery is limited to defamatory false averments of fact and the truth of the statement is a complete defense to a defamation action." *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1071 (N.J. Super. Ct. App. Div. 2000).

Here, Plaintiff recites his initial grievances with Wallace-Scalcione's statement while failing to provide any further clarity on what was defamatory about it. Plaintiff's theory of defamation would require the Court to infer and apply meaning that is expressly not there. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (noting court was not "compelled to accept unsupported conclusions and *unwarranted inferences*" as true on motion to dismiss) (emphasis added) (internal quotations and citations omitted). Third Circuit precedent simply does not support Plaintiff's theory, and while his current inability to find employment is unfortunate, that is a consequence of Plaintiff's own choices—not because of Defendants' press release included any false statements about him. Count Five should therefore be dismissed.

Plaintiff likewise fails to substantiate his false light claim and, again, impermissibly relies on inference. *Baraka*, 481 F.3d at 195. Plaintiff claims that because Wallace-Scalcione made a statement that Plaintiff supported Ms. Gomez's campaign—a true statement as evidenced by his campaign contributions and X posts. He claims that because he is a "progressive Democrat," Ms. Wallace Scalcione's statement falsely portrayed him as a "racist or bigot." Pl.'s Br. at 35–

– 11 –

36.  The problem, for Plaintiff, is that Ms. Wallace-Scalcione never claimed that Plaintiff was a racist or a bigot.  She accurately stated that he supported his sister's campaign.  Accordingly, Plaintiff's reliance on a chain of inferences is unsupported by law in this Circuit or any other and merits dismissal of Count Six.

## V.    PLAINTIFF'S LAD CLAIMS REMAIN DEFICIENT UNDER THE LAW.

Defendants did not discriminate against or harass Plaintiff based on his membership in a protected class, and his termination was unrelated to his membership in a protected class.  Accordingly, his LAD claims are deficient.

### A.    Plaintiff Fails to State a *Prima Facie* Discriminatory Discharge Claim Under LAD.

First, Plaintiff admits that he does not meet all the elements of a discriminatory discharge claim because Defendants' have not "sought similarly qualified individuals for [his] job."  Pl.'s Br. at 37; *Victor v. State,* 203 N.J. 383, 409 (2010).  On this basis alone, Plaintiff's LAD claims are defective and must be dismissed.

Second, Plaintiff's insubordination theory—that an employee cannot be insubordinate while off-the-clock—is entirely unsupported by precedent.  Plaintiff offers no supporting case law for his conclusion that being on vacation and being able to perform the essential functions of his job are mutually exclusive.  It is likely, now more than ever before with the advent and proliferation of social media, that an employee's offline or off-the-clock behavior can reflect conduct unbecoming of the

position and therefore warrant termination. *Cf. Fenico v. City of Philadelphia*, 2024 WL 4591798, at *34 (E.D. Pa. Oct. 28, 2024) (granting summary judgment for employer on all of Plaintiffs' First Amendment retaliation claims because of anti-immigrant and anti-Muslim social media posts that "were likely to cause significant interference with [employer's] operations"); *McVey v. AtlantiCare Medical Sys. Inc.*, 276 A.3d 677, 684 (N.J. Super. Ct. App. Div. 2022) (finding private employer did not violate a clear mandate of public policy after terminating employee for her anti-Black Lives Matter posts on social media).

Ultimately, one's employment and representation of his employer and even industry, especially in the realm of politics, does not simply end when one clocks out for the day or travels outside of the state. Thus, Plaintiff has failed to adequately allege that he meets the requisite elements for discriminatory discharge.

**B.    Plaintiff Fails to Demonstrate the Requisite Severity or Pervasiveness of Defendants' Workplace Comments on his Lunch.**

Plaintiff's hostile work environment claim is deficient as a matter of law because he fails to demonstrate the severity or pervasiveness of Defendants' alleged conduct. A hostile work environment claim must be supported by, *inter alia*, conduct "severe or pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile and abusive." *Lehmann v. Toys R'Us, Inc.*, 132 N.J. 587, 603–04 (1993). Severity or pervasiveness is determined by considering frequency, severity, whether it is

– 13 –

physically threatening or humiliating, or instead a "mere offensive utterance," and if it "unreasonably interfere[d] with the employee's job performance." *Godfrey v. Princeton Theological Seminary*, 196 N.J. 178, 196 (2008).

Plaintiff has failed to show how the complained-of conduct rose to the requisite level of severity or pervasiveness so as to make the conditions either hostile or abusive—a fairly high bar under the law. *See Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018).   Instead, Plaintiff recites the same allegations made in the Complaint.   Those allegations remain deficient because they fail to provide information about the frequency, severity, threateningness, or its impact on Plaintiff's job performance that would have plausibly furthered Plaintiff's own claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564–66 (2007) (finding that legal conclusions resting on prior allegations insufficient to constitute plausibility); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (courts need not accept as true a "legal conclusion couched as a factual allegation").   Conclusory statements such as these are insufficient to withstand a motion to dismiss. *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018).

### C. Defendants Cannot be Liable for Aiding and Abetting LAD Violations Because They Did Not Discriminate Against nor Harass Plaintiff.

Plaintiff has failed to allege that Defendants purposefully discriminated against him, were deliberately indifferent to him, or otherwise harassed him in any

form, warranting dismissal of all of Plaintiff's LAD claims. *See Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) (noting aiding and abetting claims will fail where there was no LAD violation).

First, Plaintiff omits any discussion of how Mayor Fulop was involved in aiding and abetting his workplace discrimination claims. Second, with respect to Plaintiff's aiding and abetting claim against Metro and Minella for calling him on August 5, 2024, Plaintiff fails to allege either how a superior calling a subordinate constitutes workplace discrimination or how this impeded Plaintiff's ability to perform his job. Lastly, Plaintiff fails to substantiate his aiding and abetting claim with any precedent whatsoever that would allow the Court to make even an inference of aiding and abetting.

Because these basic elements of a LAD claim are simply not alleged in the Complaint, dismissal is warranted here.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss.

Dated:    March 10, 2025           Respectfully submitted,
          Newark, New Jersey
                                   CALCAGNI & KANEFSKY LLP

                                    /s/ Ralph J. Marra, Jr.

                                   Ralph J. Marra, Jr., Esq.
                                   Paul C. Kingsbery, Esq.
                                   Emily Arezzi, Esq.
                                   One Newark Center
                                   1085 Raymond Blvd., 18th Floor
                                   Newark, New Jersey 07102
                                   (862) 392-1796
                                   rmarra@ck-litigation.com
                                   pkingsbery@ck-litigation.com
                                   earezzi@ck-litigation.com

                                   *Attorneys for Defendants The City of
                                   Jersey City, Mayor Steven Fulop,
                                   Kimberly Wallace-Scalcione, John
                                   Minella, John Metro, and Mobin Yousaf*