## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN GOMEZ NORIEGA,<br><br>*Plaintiff,*<br><br>– against –<br><br>THE CITY OF JERSEY CITY; MAYOR STEVEN FULOP (individually and in his official capacity as Mayor of the City of Jersey City); and JOHN METRO (individually and in his official capacity as Jersey City Manager),<br><br>*Defendants.* | 2:24-CV-10599-WJM-JRA<br>Civil Action<br><br>Motion Date:<br>September 2, 2025 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT IN PART

*Of Counsel:*
Ralph J. Marra, Jr., Esq.

*On the Brief:*
Ralph J. Marra, Jr., Esq.
Paul C. Kingsbery, Esq.
Emily Arezzi, Esq.

**CALCAGNI & KANEFSKY LLP**
*Attorneys for Defendants*

One Newark Center
1085 Raymond Blvd., 18th Floor
Newark, New Jersey 07102
(862) 397-1796
rmarra@ck-litigation.com
pkingsbery@ck-litigation.com
earezzi@ck-litigation.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ....................................................................................................................4

I.    COUNT THREE FAILS TO STATE ANY CLAIM UNDER CEPA .............4

    A.    Count Three Fails to Allege that Plaintiff had an Objectively Reasonable Belief that Defendants Violated Any Law, Regulation, or Public Policy..........................................................................................5

        1.    Plaintiff Misrepresents His Own Allegations in the Amended Complaint..................................................................6

        2.    The Court Should Consider All Relevant Publicly Available Information About Political Donations.....................9

    B.    Count Three Fails to Allege That Plaintiff Engaged in "Whistleblowing Activity."................................................................11

    C.    Count Three Fails to Allege Any Causal Connection Between Supposed "Whistleblowing Activity" and Plaintiff's Termination ....13

II.    COUNT FOUR FAILS TO STATE A *PIERCE* CLAIM .............................14

    A.    Plaintiff's *Pierce* Claim Is Defective for Substantially the Same Reasons as His CEPA Claim.................................................................14

    B.    Plaintiff Does Not Dispute That Count Four Must Be Dismissed with Respect to Defendants Mayor Fulop and Mr. Metro ............................15

CONCLUSION...............................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................2

*Barker v. United Airlines, Inc.*,
    2024 WL 378633 (D.N.J. Feb. 1, 2024)..........................................................15

*Bobo v. Wildwood Pub. Schs. Bd. of Educ.*,
    2014 WL 2215935 (D.N.J. May 28, 2014).....................................................15

*Chiofalo v. State*,
    213 A.3d 900 (N.J. 2019) ................................................................................4

*Citizens United v. FEC*,
    558 U.S. 310 (2010)..........................................................................................2

*Dzwonar v. McDevitt*,
    828 A.2d 893 (N.J. 2003) ................................................................................5

*EBIN New York, Inc. v. KISS Nail Products, Inc.*,
    2024 WL 1328029 (D.N.J. Mar. 28, 2024) ....................................................15

*Metzler v. Am. Transp. Grp., L.L.C.*,
    2008 WL 413311 (D.N.J. Feb. 13, 2008).......................................................15

*Paskas v. United Parcel Serv., Inc.*,
    2024 WL 4345208 (D.N.J. Sept. 30, 2024)............................................ 13, 14

*Pierce v. Ortho Pharm. Corp.*,
    417 A.2d 505 (N.J. 1980) ............................................................... 3, 4, 14, 15

*Robles v. U.S. Env't Univ. Servs., Inc.*,
    469 F. App'x 104 (3d Cir. 2012).....................................................................13

*Tartaglia v. UBS PaineWebber Inc.*,
    961 A.2d 1167 (N.J. 2008) .............................................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)....................................................................................5, 10

**Statutes**

N.J.S.A. § 34:19-3(a) ...................................................................................................11

N.J.S.A. § 34:19-3(b) ...................................................................................................11

N.J.S.A. § 34:19-3(c) ................................................................................................4, 11

N.J.S.A. § 34:19-3(c)(1)–(2) ........................................................................................11

**Rules**

Rule of Civil Procedure 11 ............................................................................................9

Defendants The City of Jersey City ("Jersey City"), Mayor Steven Fulop ("Mayor Fulop"), and John Metro (collectively "Defendants") respectfully submit this reply brief in further support of their motion to dismiss Counts Three and Four of Plaintiff's First Amended Complaint. For the reasons that follow, the motion should be granted.

## PRELIMINARY STATEMENT

Plaintiff's claim that he engaged in "whistleblowing" activities in response to Mayor Fulop's July 25, 2024 public announcement of a proposal to invest a portion of the Jersey City Employees Retirement System's ("ERS") funds in Bitcoin Exchange-Traded Funds ("ETFs") (the "Announcement") is based entirely on conclusory and speculative allegations about Plaintiff's subjective beliefs, rather than plausible factual allegations concerning Defendants' conduct.

To clarify a point that Plaintiff's opposition brief obfuscates: The Amended Complaint does not allege that Defendants ever used ERS funds illegally. In fact, the Amended Complaint does not say whether the ERS ever acted on the Announcement. Under the most generous permissible reading of Plaintiff's allegations, he merely claims that he believed the Announcement—a proposal for an ERS investment supported by Mayor Fulop—"was politically motivated and designed to benefit [Mayor] Fulop's donors, including those affiliated with the digital asset industry." Am. Compl. ¶ 150. The only factual basis for that claim is

that, according to publicly available campaign finance filings, some individuals who had contributed to Mayor Fulop's political campaigns or an independent expenditure committee were employed in the "digital asset industry." *Id.* Yet the Amended Complaint does not explain how an investment proposal, or preparatory steps for that proposal, could be reasonably interpreted as a violation of law. And it is undisputed that all the information on which Plaintiff's "whistleblowing activities" was supposedly based was publicly available.

Federal trial courts make reasonable factual inferences in favor of plaintiffs when deciding motions to dismiss, but they are not required to accept wholly speculative allegations like Plaintiff's. Virtually every consequential policy decision made by an elected official will align with some donors' interests and conflict with those of others. *See Citizens United v. FEC*, 558 U.S. 310, 359 (2010). As such, lawful donations to a candidate within contribution limits and lawful donations to independent expenditure committees from employees in a particular industry do not give rise to a plausible claim that a policy decision affecting that industry was motivated by improper political considerations and it certainly is not sufficient to establish a corrupt quid pro quo. *Id.* at 356–57. Even under the most generous reading of the Amended Complaint, Plaintiff's claim that he was a "whistleblower" is precisely the kind of speculative claim that must be dismissed under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Neither of the whistleblower claims is supported by sufficient allegations of fact; rather, they are premised on mere speculation and bare legal conclusions. As explained in Defendants' memorandum of law in support of this motion ("Defs.' Mot."), Count Three of the Amended Complaint fails to state a claim under the New Jersey Conscientious Employee Protection Act ("CEPA") because three of the four essential elements of that claim are not supported by well-pled factual allegations. Specifically, the facts alleged in the Amended Complaint are insufficient to show that: (1) Plaintiff had a reasonable belief that the Announcement violated a law, regulation, or public policy; (2) Plaintiff engaged in protected "whistleblowing" activity as a result of the Announcement; or (3) that his supposed "whistleblowing" activity had any causal connection to the termination of his employment by Jersey City on or about August 5, 2024.

Count Four of the Amended Complaint, which purports to allege a common law claim for wrongful discharge in violation of public policy under *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (N.J. 1980), fares no better. Plaintiff's *Pierce* claim suffers from substantially the same defects as his CEPA claim and therefore must be dismissed for substantially the same reasons. Moreover, Plaintiff does not dispute Defendants' arguments that *Pierce* claims require more than mere objections or that *Pierce* claims may not be brought against non-employer individuals like Defendants

– 3 –

Mayor Fulop and Mr. Metro. Accordingly, Plaintiff has effectively conceded that his *Pierce* claims are not viable.

For all the foregoing reasons and the reasons that follow, the Court should grant Defendants' motion to dismiss Counts Three and Four of the Amended Complaint.

## ARGUMENT

### I.   COUNT THREE FAILS TO STATE ANY CLAIM UNDER CEPA.

In moving to dismiss Counts Three and Four of the Amended Complaint, Defendants explained in detail why the plausible factual allegations and other facts this Court may consider in connection with a motion to dismiss do not state a claim under CEPA. To support a viable CEPA claim under New Jersey law, a plaintiff must allege that: "(1) he or she reasonably believed that his or her employer's conduct [] violat[ed] either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing activity described in N.J.S.A. § 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Chiofalo v. State*, 213 A.3d 900, 908 (N.J. 2019) (quotations omitted). The Amended Complaint is devoid of plausible allegations of fact supporting the first, second, or fourth elements of a CEPA claim. Plaintiff's failure to adequately allege any one of these three elements

– 4 –

warrants dismissal of his CEPA claim in its entirety.

### A. Count Three Fails to Allege that Plaintiff had an Objectively Reasonable Belief that Defendants Violated Any Law, Regulation, or Public Policy.

Plaintiff's CEPA claim must be dismissed because the Amended Complaint is devoid of "facts that would support an *objectively reasonable* belief that a violation has occurred." *Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003) (emphasis added).

With respect to the first element of his CEPA claim, Plaintiff claims that after learning of the Announcement and other "directives" to Mr. Metro, he "reasonably perceived" Mayor Fulop's investment proposal "as an illegal pay-to-play situation" implicating statutory prohibitions intended to ensure the independent judgment of certain government officers. Pls.' Opp. at 12. Plaintiff's own characterization of his belief as "reasonable" does not make it so. The text of the Announcement itself, which this Court may consider as a "document[] incorporated by reference and integral to the pleading," *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007), plainly stated that the ERS was "in process of updating paperwork to the SEC to allocate % of the fund to Bitcoin ETFs" and that Mayor Fulop expected that to "be completed by end of the summer." Marra Decl. Ex. C at 1. And the only alleged "directives" to Mr. Metro were preparatory, consistent with the text of the Announcement. Am. Compl. ¶ 132.

Rather than explaining how the proposed investment described in the Announcement would provide a basis for Plaintiff's belief that Mayor Fulop violated any law, regulation, or public policy—much less an objectively reasonable belief of such a violation—Plaintiff spuriously argues that Defendants' motion:

(1) "misrepresent[ed] [his] allegations . . . ";

(2) "downplay[ed] the pay-to-play scheme . . . "; and

(3) "downplay[ed] the extent of the subject cryptocurrency donations in relation to the total donations received by Fulop . . . "

*Id.* at 13–15.  As explained below, none of these arguments is made in good faith, and none can save Plaintiff's facially defective CEPA claims.

### 1. Plaintiff Misrepresents His Own Allegations in the Amended Complaint.

As it apparent from the text of the Amended Complaint itself, Plaintiff—not Defendants—has misrepresented his own allegations in an attempt to salvage his frivolous CEPA claim.  As it relates to the first element of Plaintiff's CEPA claim, Plaintiff's opposition includes three substantial misrepresentations of the allegations in the Amended Complaint.

First, in the opposition brief (but not the Amended Complaint), Plaintiff claims that Mayor Fulop directed Mr. Metro "to process the investments" before a vote of the ERS commissioners, Pl.'s Opp. at 13, and "to ensure that ERS funds *would* be invested into cryptocurrency and blockchain assets prior to the requisite vote or public meeting, *id.* at 18 (emphasis added).  The problem, for Plaintiff, is

– 6 –

that the Amended Complaint makes no such allegations. Rather, the Amended Complaint alleges that "Fulop directed Defendant Metro and other agents of the City of Jersey City, to take steps to ensure the pension fund's assets *could be* invested into cryptocurrency or blockchain assets—before the requisite vote or public meeting." Am. Compl. ¶ 132 (emphasis added). In other words, the Amended Complaint merely alleges Mayor Fulop directed preparatory steps to make a new type of asset class possible prior to the ERS commissioners' vote on whether to actually make that investment, while Plaintiff's opposition brief suggests actual funds were invested prior to ERS consideration and approval. Here, the improper substitution of "would" for "could" in Plaintiff's opposition brief radically changes the meaning of the cited portion of his pleading. However creative, Plaintiff's new "interpretation" of the Amended Complaint in his opposition brief is indefensible.

Second, in his opposition brief (but again, not in the Amended Complaint), Plaintiff alleges that Mayor Fulop "used both direct and indirect means to end-around the ERS board process, avoiding review and scrutinization that could have, amongst other things, explore [sic] how and whether Fulop's campaign could benefit from the ERS investment into the cryptocurrency industry that supported his political aspirations."[1] Pl.'s Opp. at 14–15. This is another clear mischaracterization

---

[1] Tellingly, this false paraphrase of Plaintiff's own allegations in the Amended Complaint is not accompanied by any citation to specific portions of the pleading.

of the Amended Complaint, which makes no allegations whatsoever about "the ERS board process" that followed the Announcement. To be very clear on this point: the Amended Complaint alleges nothing about the ERS's actual consideration or approval of the investment proposed by Mayor Fulop in the Announcement. Although the ERS's votes and meetings are subject to the Open Public Records Act and therefore readily available to Plaintiff, he has opted to say nothing about the ERS's "review" or "scrutinization" of any investment proposals made by Mayor Fulop.

Third, although the Amended Complaint relied entirely on the unwarranted insinuation that the Announcement was intended to improperly benefit Mayor Fulop's donors based on nothing more than lawful political donations, Plaintiff now claims that his CEPA claim is actually grounded in concerns about the processes followed by the ERS when it made investment decisions. Plaintiff writes: "[I]t wasn't that ERS invested into an industry that was comprised of individuals who stood to support Fulop financially, it was that this *investment was made in way that avoided neutral assessment* and raised clear concerns that nefariousness abounded." Pl.'s Opp. at 15 (emphasis added).[2] As noted above, the problem for Plaintiff is that the Amended Complaint says *nothing* about any actual investment made by ERS, the processes ERS followed in making such investments, or how it "avoided neutral

---

[2] Again, Plaintiff provides no citations to the Amended Complaint here.

– 8 –

assessment." If Plaintiff's chief complaint concerns how the ERS eventually decided to invest its funds, some allegation about how that investment decision was made would be a logical starting point. Yet the Amended Complaint is startlingly silent on this point.

If Plaintiff could, consistent with the restrictions of Rule 11, allege that ERS funds were invested without the required votes and public meetings, or that Mayor Fulop "forced" his fellow ERS commissioners to vote on an investment proposal without time for due consideration and "neutral assessment," such allegations might support the first element of a CEPA claim. But here, no such allegations can be found in the Amended Complaint, and the Court should reject Plaintiff's attempt to re-write his facially defective CEPA claim and grant Defendants' motion to dismiss.

### 2. The Court Should Consider All Relevant Publicly Available Information About Political Donations.

Plaintiff next argues that, by offering additional, publicly available information about the political donations referenced in the Amended Complaint, Defendants were attempting to "downplay" the impact of those donations and "argue that such donors stood to receive no benefit." Pls.' Opp. at 15. Not so. Defendants have neither "downplay[ed]" the supposed "pay-to-play scheme" nor "the extent of the subject cryptocurrency donations in relation to the total donations received by Fulop." Defendants have merely pointed to facial deficiencies in Plaintiff's own pleading. In his Amended Complaint, Plaintiff urges the Court to assume that Mayor

– 9 –

Fulop's performance of his duties as an ERS commissioner was compromised by impermissible campaign contributions based on the bare allegations that: Mayor Fulop "had received over $70,000 . . . in political donations from a Coinbase executive," Am. Comp. at 3, and that "other notable figures within the cryptocurrency industry, besides Tusar, have also contributed to Fulop and Coalition for Progress." *Id.* ¶¶ 123–24, 126. In considering the plausibility of the allegation that Mayor Fulop's judgment was compromised by donations, Defendants respectfully submit that it is appropriate to consider all appropriate campaign data, which shows that the direct contributions to Mayor Fulop amounted to less than 0.07% of the total donations for the relevant time frame. Defs.' Mot. at 15; Marra Decl. ¶¶ 7–9.

In other words, Plaintiff seeks an inference that the donations referenced in the Amended Complaint were sufficient to compromise Mayor Fulop's judgment. The broader factual context, which is based entirely on publicly available information referenced in and incorporated into the Amended Complaint, *see* Am. Compl. ¶¶ 122–26, shows that this inference is unreasonable. And the Court may consider this data in the context of a motion to dismiss, *see Tellabs*, 551 U.S. at 322, which Plaintiff does not dispute.

### B. Count Three Fails to Allege That Plaintiff Engaged in "Whistleblowing Activity."

The second element of a CEPA claim requires plausible factual allegations that Plaintiff engaged in "whistleblowing activity." Plaintiff admits that he did not engage in "whistleblowing activity" as defined in N.J.S.A. § 34:19-3(a) or (b), which would entail disclosing unlawful conduct or reporting such conduct to certain public bodies. Rather, he claims that he engaged in "whistleblowing" activity as defined in N.J.S.A. § 34:19-3(c), which encompasses "object[ing] to, or refus[ing to participate in any activity, policy or practice which the employee reasonably believe[d]" to be "in violation of a law, or a rule or regulation promulgated pursuant to law" or was "fraudulent or criminal." *Id.* § 34:19-3(c)(1)–(2).

Plaintiff's conclusory allegation that he "objected" to the Announcement is undermined by the allegations in Plaintiff's own pleading and its attached documents. *See* Defs.' Mot. at 17–19. Plaintiff claims that he "discussed the legality and propriety of this action with Defendant Metro, both via text and in-person, expressing concerns that the move violated statutes and governing documents of the fund." Am. Compl. ¶ 149. The text messages annexed to the Amended Complaint show that this claim is false with respect to Plaintiff's claim that he "objected" "via text." *See* Am. Compl. at 43–45.

Plaintiff alternatively claims that he "objected" to Mayor Fulop's proposed investment "in person," but all of these allegations are threadbare and conclusory,

– 11 –

neither identifying when conversations took place or what specific unlawful conduct Plaintiff objected to.  *See* Am. Compl. ¶ 111 ("... Fulop took steps to invest ERS funds into cryptocurrency investments under legally questionably circumstances, and Plaintiff objected to this plan."), 146 ("Plaintiff's objection to this pronouncement constituted protected activity under [CEPA]."), 153 ("... within days of Plaintiff's objections to the unlawful pension investment, Plaintiff was terminated from his position"); 154 ("The termination of Plaintiff was ultimately done to silence him due to whistle blowing concerning the ERS fund's investment being improper and violative of relevant statutes and laws, or his objectively reasonable belief that Fulop's Metro's [sic] actions were violative of related law or policy."), 180 ("Plaintiff objected to Defendants about these violations of law."), 191 ("Plaintiff took actions reasonably calculated to prevent the objectionable conduct.").

These are the kinds of threadbare, formulaic allegations that are insufficient under *Twombly* and *Iqbal*.  Beyond offering text messages that undermine his "objection" claim, Plaintiff does not even attempt to describe the actual content of his alleged conversations with Mr. Metro on the subject, but instead relies on the conclusory allegation that they constituted legally protected whistleblowing activities within the meaning of CEPA.

### C. Count Three Fails to Allege Any Causal Connection Between Supposed "Whistleblowing Activity" and Plaintiff's Termination.

Finally, Plaintiff's CEPA claim is defective because Plaintiff cannot establish any causal link between his supposed "whistleblowing" activity and his termination. *See* Am. Compl. ¶ 76–81, 89–96. Plaintiff does not allege that Mayor Fulop was even aware of his supposed "whistleblowing" activity at the time his employment was terminated; rather, Plaintiff relies on two distinct "temporal proximity" inferences in wholly inapplicable caselaw.

In support of his "suggestive temporal proximity" argument, Plaintiff alleges that he was terminated "[a]pproximately one (1) week" after his purported "whistleblowing activity" began and that his "objections were well known amongst the administration prior to his termination mere days later." Pls.' Opp. at 18. (The Amended Complaint does not allege this. *See* Am. Compl. ¶¶ 97, 153–56.) These allegations, when read in the context of all the allegations in the Amended Complaint, are insufficient to support his claim that his supposed "whistleblowing activities" were the "determinative factor" leading to his termination. *See Robles v. U.S. Env't Univ. Servs., Inc.*, 469 F. App'x 104, 107 (3d Cir. 2012); *Paskas v. United Parcel Serv., Inc.* 2024 WL 4345208, at *7 (D.N.J. Sept. 30, 2024). As the Court discussed in *Paskas*, temporal proximity will support an inference of causation only where it is "unusually suggestive." Plaintiff's allegations that Mayor Fulop terminated his employment as a result of his support for his sister's campaign on

– 13 –

August 5, 2024, are logically incompatible with an inference that his supposed "whistleblowing" activity more than one week earlier was a determinative factor that led to his termination—particularly because Plaintiff does not even allege that Mayor Fulop knew about that supposed "whistleblowing" activity.

Nor is Plaintiff's causation supported by the alternate "temporal proximity plus" theory here. That theory requires an allegation of temporal proximity of the termination coupled with a claimed "pattern" of antagonism motivated by the claimed whistleblowing activities. *Paskas*, 2024 WL 4345208, at *9. Plaintiff's opposition brief claims that the Amended Complaint "outlines the clear antagonistic responses of the administration to individuals such as plaintiff who stood to object to the ERS scheme," but provides no citations whatsoever to a single act of "antagonism" directed at Plaintiff or any other individual for "object[ing]" to Mayor Fulop's proposed investment in Bitcoin ETFs. *See* Pl.'s Opp. at 11, 18, 19.

## II.     COUNT FOUR FAILS TO STATE A *PIERCE* CLAIM.

### A.     Plaintiff's *Pierce* Claim Is Defective for Substantially the Same Reasons as His CEPA Claim.

Plaintiff's *Pierce* claim fails to sufficiently allege that his termination "violated a clear mandate of public policy." *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1184 (N.J. 2008). On that basis alone, Count Four should be dismissed. Moreover, Plaintiff does not address Defendants' argument that termination following an employee's expression of an "objectively reasonable

– 14 –

belief" of a violation—without more—is insufficient to state a *Pierce* claim. *See* Defs.' Opp at 26–27 (citing *Bobo v. Wildwood Pub. Schs. Bd. of Educ.*, 2014 WL 2215935, at *6 (D.N.J. May 28, 2014)). Accordingly, the Court should grant Defendants' motion to dismiss Count Four as uncontested. *See EBIN New York, Inc. v. KISS Nail Products, Inc.*, 2024 WL 1328029, at *7 (D.N.J. Mar. 28, 2024) (citations omitted).

### B. Plaintiff Does Not Dispute That Count Four Must Be Dismissed with Respect to Defendants Mayor Fulop and Mr. Metro.

A *Pierce* claim may only be directed at a plaintiff's employer, not other individual employees of that same employer. *See* Defs.' Mot. at 27–28 (citing *Metzler v. Am. Transp. Grp., L.L.C.*, 2008 WL 413311, at *5 (D.N.J. Feb. 13, 2008) (citations omitted); *Barker v. United Airlines, Inc.*, 2024 WL 378633, at *4 (D.N.J. Feb. 1, 2024) (citations omitted)). Accordingly, Count Four must be dismissed against Mayor Fulop and Mr. Metro because those individuals were not Plaintiff's employers. *See* Defs.' Mot. at 27–28. Additionally, because Plaintiff has failed to address this argument in his opposition brief, the Court should grant Defendants' motion to dismiss Count Four with respect to Mayor Fulop and Mr. Metro as uncontested. *See EBIN New York.*, 2024 WL 1328029, at *7.

### CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss.

| | |
|---|---|
| Dated: August 18, 2025<br>Newark, New Jersey | Respectfully submitted,<br><br>CALCAGNI & KANEFSKY LLP<br><br>  /s/ Ralph J. Marra, Jr.<br><br>Ralph J. Marra, Jr., Esq.<br>Paul C. Kingsbery, Esq.<br>Emily Arezzi, Esq.<br>One Newark Center<br>1085 Raymond Blvd., 18th Floor<br>Newark, New Jersey 07102<br>(862) 392-1796<br>rmarra@ck-litigation.com<br>pkingsbery@ck-litigation.com<br>earezzi@ck-litigation.com<br><br>*Attorneys for Defendants The City of Jersey City, Mayor Steven Fulop, and John Metro* |