## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JONATHAN GOMEZ NORIEGA, | No. 2:24-cv-10599-WJM-JRA |
| Plaintiff, | OPINION |
| v. | |
| THE CITY OF JERSEY CITY; MAYOR STEVEN FULOP (individually and in his official capacity as Mayor of the City of Jersey City); KIMBERLY WALLACE-SCALCIONE (individually and in her official capacity as Press Secretary/Spokesperson for the City of Jersey City); JOHN MINELLA (individually and in his official capacity as Mayor Fulop's Chief of Staff); JOHN METRO (individually and in his official capacity as Jersey City Manager); MOBIN YOUSAF (individually and in her official capacity as Jersey City Director, Employee Relations & Workforce Management); JOHN DOE (1-10) | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

In his First Amended Complaint ("FAC"), Plaintiff Jonathan Gomez Noriega ("Plaintiff") brings two claims against the City of Jersey City, New Jersey, its mayor Steven Fulop, and city manager John Metro alleging a New Jersey Conscientious Employee Protections Act ("CEPA") violation for retaliatory discharge ("Count Three"), and wrongful discharge in violation of public policy ("Count Four"). ECF No. 37.

Before the Court is Defendants' Motion to Dismiss Counts Three and Four of the FAC for failure to state a claim. For the reasons set forth herein, Defendants' Motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2025, this Court denied Defendants' motion to dismiss Counts One and Two of Plaintiff's Complaint. ECF No. 21. Plaintiff was granted leave to amend on June 11, 2025. ECF No. 34. The FAC maintains Counts One and Two while adding Counts Three and Four as

additional causes of action. The facts relevant to Counts Three of Four of the FAC, accepted as true only for the purposes of resolving the instant motion, are as follows.[1]

On July 25, 2024, Jersey City Mayor Steven Fulop posted on the social media platform X (f/k/a Twitter) announcing a proposal to invest a portion of the Employees' Retirement System of Jersey City ("ERS") in Bitcoin Exchange Traded Funds.[2] The post stated, in sum and substance, that ERS was beginning to update its investment strategy to allocate a percentage of the fund towards Bitcoin ETFs. FAC ¶¶ 127 n.15 (the "Announcement").

Plaintiff, a former aide to Mayor Fulop and employee of the City of Jersey City, contends that the Announcement violated N.J.S.A. 43:13-22.50 *et seq.* because Fulop announced plans to alter the ERS "before the ERS board members voted to approve such an allocation of ERS funds." FAC ¶ 130 (emphasis omitted); *see also id.* ¶ 128. Additionally, the FAC asserts the Announcement occurred under "legally questionably [sic] circumstances," *id.* ¶ 111, referring to its allegations that Fulop received campaign contributions from Gregory Tusar, an executive at the cryptocurrency exchange Coinbase, and from "other notable figures within the cryptocurrency industry." *Id.* ¶¶ 123-26.

Given the FAC's allegations that Fulop has political ties to the cryptocurrency industry, Plaintiff also contends that the Announcement violated three provisions of New Jersey's Local Government Ethics Laws. *See* N.J.S.A. 40A:9-22.5(c)-(e). Specifically, the FAC alleges the Announcement was: (1) "a potential misuse of [Fulop's] position of authority to influence or preempt official board action to the advantage himself"; (2) an act in Mayor Fulop's official capacity where he had an "indirect personal involvement that might reasonably be expected to impair his objectivity or independence of judgment"; and (3) violative of the law's prohibition on government officers undertaking "any employment or service . . . which might reasonably be expected to prejudice his independence of judgment in the exercise of his official duties." FAC ¶¶ 142-45.

The Announcement "deeply concerned" Plaintiff and lead him to believe that Fulop was violating the laws described above. *Id.* ¶¶ 136-37. In response, the FAC alleges, "Plaintiff expressed that Fulop's unilateral pronouncement relating to the crypto or blockchain investment was likely illegal and unethical." *Id.* ¶ 139. The FAC further alleges that "Plaintiff reported this pronouncement was improper to [Defendant] Metro and was subsequently fired." *Id.* ¶¶ 147. To support these allegations, the FAC includes a time-stamped text message thread between Plaintiff

---

[1] The facts relevant to Counts One and Two of the FAC have been set forth in this Court's earlier opinion. *See* ECF No. 21.

[2] Bitcoin is a type of cryptocurrency. Executive Order 14,233—Establishment of the Strategic Bitcoin Reserve and United States Digital Asset Stockpile (2025). An exchange-traded fund, or "ETF," is a type of exchange-traded investment product that "pool[s] money from many investors and invest[s] the money in stock, bonds, short-term money-market instruments, other securities or assets, or some combination of these investments." U.S. Sec. and Exch. Comm'n, *Exchange-Traded Funds (ETFs)*, INVESTOR.GOV https://perma.cc/YC3T-PQTE (last visited Sept. 23, 2025).

and Defendant Metro where the parties discussed the Announcement. *See* FAC Ex. A. Plaintiff alleges he was terminated "within days" of his objection. *Id.* ¶ 153.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The Court, accepting all allegations in the complaint as true, will grant a motion to dismiss only if the plaintiff fails to plead "sufficient factual matter to show that the claim is facially plausible." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Conclusory or 'bare-bones' allegations" will not survive a motion to dismiss. *Fowler*, 578 F.3d at 210. Nor will "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 550 U.S. at 663.

## III.    DISCUSSION

### A.    CEPA (Count Three)

To state a claim under CEPA, a plaintiff must allege: (1) a reasonable belief that his or her employer's conduct was violating a law, rule, regulation, or clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19–3; (3) an adverse employment action was taken against him or her;[3] and (4) a causal connection between the whistle-blowing activity and the adverse employment action. *Lippman v. Ethicon, Inc.*, 222 N.J. 362, 379 (2015). "On a motion to dismiss in a CEPA case, it is the Court's role to 'make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff.'" *Myers v. Advanced Stores Co. Inc.*, No. 19-cv-18183, 2020 WL 2744632, at *3 (D.N.J. May 27, 2020) (quoting *Dzwonar v. McDevitt*, 177 N.J. 451, 464 (2003)).

There is no requirement that a plaintiff must allege an actual legal violation to establish the first element of a CEPA claim. *Avetzuk v. Hertz*, No. 23-cv-22568, 2025 WL 559845, at *3 (D.N.J. Feb. 20, 2025). Pleading a reasonable belief that an employer's conduct constituted a violation is sufficient to survive a motion to dismiss. *Id.*; *Dzwonar*, 177 N.J. at 464; *see also Ho-Ho-Kus, Inc. v. Sucharski*, No. 23-cv-1677, 2024 WL 4647964, at *6 (D.N.J. Nov. 1, 2024).

The FAC sufficiently pleads a reasonable belief that Fulop's conduct was illegal. Plaintiff asserts that the Announcement violated New Jersey state laws regarding the proper procedures for modifying the ERS's investment decisions and ethical behavior of state officials. FAC ¶¶ 128-30, 141-45. This is enough to demonstrate the first element of a CEPA claim. *See Ho-Ho-Kus*, 2024

---

[3] The parties do not appear to dispute this element.

WL 4647964, at *7 (finding claimants satisfied this element where they cited "several statutes, regulatory standards, and public policies they contend [the employer] violated in pursuing its stated course of action").

Plaintiff, however, fails to plead a whistle-blowing activity under N.J.S.A. 34:19–3. The statute bars an employer from retaliating against an employee who, as alleged here, "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation . . . ." N.J.S.A. 34:19–3(c).

The FAC lacks basic details regarding Plaintiff's whistle-blowing activity. It alleges only that Plaintiff "expressed that [the Announcement] was likely illegal," FAC ¶ 139, "reported [the Announcement] was improper to Metro," *id.* ¶ 147, and "discussed the legality and property of [the Announcement] with Defendant Metro, both via text and in person, expressing concerns that the move violated statutes and governing documents of the fund." *Id.* ¶ 149. Absent are the "date, time, or location" of Plaintiff's objection, as well as the content of Plaintiff's communications to Metro. *See Robert v. Autopart Int'l.*, No. 14-cv-7266, 2015 WL 4031740, at *2-3 (D.N.J. June 30, 2015) (finding no objection under CEPA because the complaint did not, among other things, allege a "date, time, or location" of the plaintiff's whistle-blowing activity); *Ho-Ho-Kus*, 2024 WL 4647964, at *9 (listing "a rough timeline of dates, the name of the [employer's] representative to whom concerns were communicated, and the substance of those communications" as details that can demonstrate a whistle-blowing activity under CEPA). Without this information, the FAC does not "raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). As a result, the FAC fails to plead a viable CEPA claim. *See Clayton v. City of Atlantic City*, 722 F. Supp. 2d 581, 589 (D. N. J. 2010) (dismissing CEPA claim because Plaintiff failed to allege that she performed a whistle-blowing activity).

While the FAC includes a text message conversation between Plaintiff and Defendant Metro, this too fails to offer any material support for Plaintiff's claim that he objected to the Announcement. If anything, the thread indicates that Plaintiff shared his *approval* of the Announcement. *See* FAC Ex. A (Plaintiff replying "Nice my dude!" in response to Metro's sharing a news article discussing the Announcement). To the extent Plaintiff argues that he had "numerous conversations with Metro . . . concerning the ordered ERS practices," Pl.'s Opp'n 17, such allegations are not found in the FAC, and the Court does not consider them. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

Plaintiff has failed to plead the second element under CEPA, and his claim must be dismissed. Defendants' motion to dismiss Count Three is **GRANTED**.

### B. Wrongful Discharge (Count Four)

Next, Defendants move to dismiss Plaintiff's claim for wrongful discharge in violation of New Jersey common law under *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980). To state a *Pierce* claim, the employee must identify a "clear mandate of public policy" and then show that the

discharge violated that policy. *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81 (2008). Mandates of public policy can be found in legislation, administrative rules and regulations, and judicial decisions. *Pierce*, 84 N.J. at 72. The analysis of the first element of *Pierce* is similar to the analysis of CEPA's first element. *See Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 187 (1998).

The second element requires "an expression by the employee of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy." *Tartaglia*, 197 N.J. at 109. As the New Jersey Supreme Court explained, "a complaint to an outside agency will ordinarily be a sufficient means of expression, but a passing remark to co-workers will not. A direct complaint to senior corporate management would likely suffice, but a complaint to an immediate supervisor generally would not." *Id.*

A *Pierce* claim can only be brought against an employer, not individual employees, which Plaintiff does not appear to dispute. *Metzler v. Am. Transp. Grp., L.L.C.*, No. 07-cv-2066, 2008 WL 413311, at *5 (D.N.J. Feb. 13, 2008) ("A plaintiff is only able to maintain a *Pierce* cause of action against his or her employer—not against individual employees"); *Illiano v. Wayne Bd. of Educ.*, No. 22-cv-114, 2022 WL 4596729, at *5 n.2 (D.N.J. Sept. 30, 2022) (citing *O'Lone v. N.J. Dept. of Corrs.*, 313 N.J. Super. 249, 256 (N.J. App. Div. 1998)).

With respect to the City of Jersey City, Plaintiff sufficiently pleads the first element of a *Pierce* claim. Plaintiff alleges that the Announcement violates public policy relating to the investment of public pension funds and New Jersey's Local Government Ethics Laws. FAC ¶¶ 141-45. The Court finds this implicates a "clear mandate of public policy" and therefore raises a public concern. *See Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 89 (1992).

Plaintiff does not sufficiently plead the second element of his *Pierce* claim. As described above, the FAC does not contain enough information for the Court to conclude that Plaintiff expressed disagreement with the Announcement. *See Tartaglia*, 197 N.J. at 109. Moreover, the FAC is devoid of any allegations that Plaintiff raised his concerns to Fulop—only Metro. Nor does Metro, who Plaintiff describes as his supervisor, appear to be a member of senior management. *See id.* ("A complaint to an immediate supervisor generally would not [suffice]"); Pl.'s Opp'n 2. Count Four is **DISMISSED**.

## C.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. An appropriate order follows.

Date: September 23 2025

WILLIAM J. MARTINI, U.S.D.J.

5